UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
DAN HARKABI & GIDON ELAZAR,                    :

                     Plaintiffs,          :

        -against-                              :

SANDISK CORPORATION,                           :

                 Defendant.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

08 Civ. 8203 (WHP)

MEMORANDUM & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/12/12

            Dan Harkabi ("Harkabi") & Gidon Elazar ("Elazar," together, "Plaintiffs") assert,

inter alia, a claim for breach of a contractual earn-out provision against SanDisk Corporation

("SanDisk") relating to the sales of flash memory products incorporating Plaintiffs' software.

SanDisk moves in limine to exclude the report and testimony of Plaintiffs' expert Dr. Vijay

Madisetti ("Dr. Madisetti").  SanDisk also moves in limine to exclude evidence that Sandisk's

Sony Memory Stick product triggers the earn-out provision.  Harkabi and Elazar oppose

SanDisk's motions and move to amend their complaint to add allegations regarding the Sony

Memory Stick.  For the following reasons, SanDisk's motion to exclude the report and testimony

of Dr. Madisetti is denied and its motion to exclude evidence relating to the Sony Memory Stick

is granted.  Harkabi and Elazar's motion to amend their complaint is denied.

## BACKGROUND

I.  The Parties and the Disputed Earn-Out Provision

            Harkabi and Elazar were executives and principal shareholders of MDRM, Inc.

("MDRM"), a developer of software for computer flash drive technology.  The factual

background of this action is set forth in this Court's Memorandum & Order, dated August 23, 2010. See Harkabi v. SanDisk Corp., 275 F.R.D. 414, 416 (S.D.N.Y. 2010). In substance, Harkabi and Elazar claim that SanDisk incorporated MDRM firmware into SanDisk's U3 flash drives ("U3 drives"), but failed to credit Plaintiffs under the earn-out. In their complaint, Harkabi and Elazar do not allege that the Sony Memory Stick incorporated their technology.

II. Production of U3 Source Code

Fact discovery commenced December 2008. By October 2009, SanDisk had produced computer code and other documents comprising all of the technology incorporated within the U3 drives. (Affirmation of Charles A. Stillman, dated July 25, 2011 ("Stillman Aff."), Ex. 1.) In August 2010, this Court sanctioned SanDisk for the spoliation of Harkabi's and Elazar's laptop computers and awarded Plaintiffs $150,000 for the time and expense of conducting a futile search for missing data. See Harkabi, 275 F.R.D. at 421. In opposing that sanctions motion, SanDisk represented that the "technology contained on the U3 . . . is documented in computer code that has been produced to plaintiffs." (Stillman Aff. Ex. 2, at 2.) On these motions in limine, SanDisk clarifies its earlier position by asserting that its initial production contained "Development Code" consisting of source code "at various stages of development for actual or potential use" in several of its flash products, including the U3 drives. (See SanDisk's Memorandum of Law in Support of its Motion In Limine to Exclude the Expert Reports and Testimony of Dr. Vijay Madisetti, dated June 20, 2011 ("SanDisk Memo"), at 6.) Importantly, SanDisk compiled only select portions of the Development Code for the U3 drives. (SanDisk Memo, at 6.)

In November 2010, Harkabi and Elazar requested snapshots of the U3 drive code for the two year period following the acquisition of MDRM. On December 13, 2010, SanDisk produced a computer hard drive containing snapshots of the U3 drive code for May 10, October 3, and November 6, 2005. (See Stillman Aff. Exs. 7, 8.) SanDisk concedes that the snapshots contain the code compiled into the U3 drives but also contends that the code includes "source code that [was] 'flagged out' or otherwise excluded during the compilation process." (See SanDisk's Reply Memorandum of Law in Further Support of its Motion In Limine to Exclude the Expert Reports and Testimony of Dr. Vijay Madisetti, dated Aug. 5, 2011, at 5-6.) Plaintiffs do not dispute that the snapshots contain code that was not compiled into the U3 drives. (See Plaintiffs' Sur-Reply in Opposition to SanDisk's Motion In Limine to Exclude the Expert Reports and Testimony of Dr. Vijay Madisetti, dated Aug. 31, 2011, at 1-2.)

III. The Parties' Expert Reports

On December 17, Dr. Madisetti issued his initial expert report, opining that the U3 drives used or embedded MDRM firmware and were sold during the earn-out period. (Stillman Aff. Ex. 10, Expert Report of Dr. Vijay K. Madisetti, Ph. D., dated Dec. 17, 2010 ("Madisetti Report").) In reaching his conclusions, Dr. Madisetti reviewed and relied on SanDisk's initial production of Development Code and the materials listed within Exhibit B to his initial report. Those additional materials include, inter alia, hundreds of SanDisk documents pertaining to the development and specifications of the U3 drives, the declarations of Harkabi and Elazar, and hundreds of pages of transcripts and exhibits from depositions of SanDisk employees who worked on the U3 project. (Madisetti Report Ex. B.) Because SanDisk produced the snapshots just four days before Dr. Madisetti's report was due, Dr. Madisetti stated

-3-

that he would "review this code and, if necessary, incorporate any commentary or opinion on it into my rebuttal report." (Madisetti Report, at 2-3.) On December 21, Harkabi and Elazar reported to SanDisk that Dr. Madisetti's opinions were unchanged by the December 13 production. (Stillman Aff. Ex. 6.) On January 14, 2011, fact discovery closed.

On February 16, 2011, SanDisk's expert Dr. Margaret L. Johnson ("Dr. Johnson") contested Dr. Madisetti's findings and opinions. Specifically, Dr. Johnson found that the U3 production code was built from a process known as "conditional compilation." (Stillman Aff. Ex. 12, Expert Report of D. Margaret L. Johnson, dated Feb. 16, 2011 ("Johnson Report"), at 35.) The code relied on by Dr. Madisetti contained indices known as "compilation flags," which determine whether a particular section of the Development Code is included in the code for a U3 drive. Dr. Johnson contended that Dr. Madisetti ignored the compilation flags in his analysis of whether a section of code for a function known as File Based Command Channel ("FBCC") was included in the code for the U3 drives. (Johnson Report, at 36.) Specifically, Dr. Johnson concluded that the compilation flags indicate that FBCC code was only incorporated in the Cruzer Freedom flash drive and a Socrates controller used in devices distinct from the U3. (Johnson Report, at 36.) There is no dispute that Harkabi and Elazar have been paid for Cruzer Freedom sales.

Dr. Madisetti's March 7 rebuttal report confirmed that the U3 code snapshots produced on December 13 had not changed his opinion that SanDisk's U3 drives utilize MDRM firmware. (Stillman Aff. Ex. 11, Rebuttal Expert Report of Dr. Vijay K. Madisetti Ph. D., dated Mar. 7, 2011 ("Madisetti Rebuttal") ¶ 8.) Dr. Madisetti also responded to Dr. Johnson's findings regarding the conditional compilation of the FBCC code. He argued that Dr. Johnson's analysis

supported his finding and pointed to sections of FBCC code that indicate they were compiled into code for U3 drives. (Madisetti Rebuttal ¶¶ 60-69.) Dr. Madisetti also opined for the first time that sales of SanDisk's successful Sony Memory Stick, which purportedly uses the Socrates controller, qualified under the earn-out provision. He based this new opinion solely on Dr. Johnson's finding that FBCC had been compiled into the Socrates controller. (Madisetti Rebuttal ¶ 71.)

Dr. Madisetti's rebuttal report was the first time Plaintiffs suggested that the Sony Memory Stick sales were covered by the earn-out provision. In fact, Plaintiffs specifically disclaimed pursuing damages for sales of any SanDisk products other than the U3 drives during their depositions. (See Harkabi Tr. at 156:21-158:19, 164:8-165:8; Elazar Tr. at 118:22-25.) Despite Plaintiffs' concessions, following Dr. Madisetti's rebuttal report and long after fact discovery closed, Harkabi and Elazar amended their interrogatory answers and Rule 26(a) disclosures to include damage calculations based on the Sony Memory Stick.

DISCUSSION

I. SanDisk's Motion *In Limine* to Exclude Dr. Madisetti's Testimony

SanDisk argues that Dr. Madisetti's expert report and testimony is unreliable and should be excluded because he (1) failed to define the U3 drives at the heart of this dispute, (2) relied exclusively on assumptions about SanDisk's source code given to him by counsel and made no independent verification, and (3) offered no substantiation of his definition of the term firmware. As a further basis for excluding Dr. Madisetti's testimony, SanDisk argues that he failed to disclose facts and data on which he relied and destroyed evidence of materials he reviewed in forming his opinions. For the following reasons, none of the arguments raised by

SanDisk require the exclusion of Dr. Madisetti's testimony.[1]

A.  Legal Standard

A party may not introduce expert testimony unless "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. "[T]he trial judge [has] the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrel Dow Pharm., Inc., 509 U.S. 579, 597 (1993). In performing its duty as a gatekeeper, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." Amorigianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). The party seeking to introduce expert testimony bears the burden of establishing its reliability and relevancy. See Daubert, 509 U.S. at 592 n.10.

B.  Dr. Madisetti's Definition of U3 drives and Analysis of Source Code

SanDisk argues that Dr. Madisetti's testimony and report should be excluded because he defined a U3 drive to mean any SanDisk product that incorporates the Development Code. SanDisk also argues that Dr. Madisetti relied solely on statements by Harkabi and Elazar's counsel in reaching his conclusion about the U3 code. Both grounds for exclusion rest on the premise that Dr. Madisetti assumed that the Development Code was incorporated in whole or part into the U3 drives, and that he made no independent verification.

In reaching that conclusion, SanDisk seizes on imprecise testimony that Dr.

---

[1] Dr. Madisetti's conclusion regarding the Sony Memory Stick is addressed in Section II, infra.

Madisetti gave during his deposition. For example, when asked what he meant by a U3 drive, Dr. Madisetti responded that he had defined it to mean "any of SanDisk's products that would be using the code that was produced to us prior to [his] first report." (Madisetti Tr. at 12:12-19.) With respect to assumptions he made about the Development Code, Dr. Madisetti testified that "I was given the direction [by Harkabi and Elazar's counsel] that the code that was produced which they call the U3 device is used either in its entirety or in portions of it in certain SanDisk products." And, "I was given the assumption . . . that it was code that was produced within SanDisk devices. But above and beyond that, . . . I have not been asked to independently confirm." (Madisetti Tr. 32:14-16.) To bolster their argument, SanDisk points to Dr. Johnson's opinion that Dr. Madisetti ignored the compilation flags for the U3 device code.

It is well settled that "expert testimony should be excluded if it is speculative or conjectural" or "not accompanied by sufficient factual information." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21-22 (2d Cir. 1996); see also Playtex Products, Inc. v. Procter & Gamble Co., No. 02 Civ. 8046 (WHP), 2003 WL 21242769, at * 10 (S.D.N.Y. May 28, 2003) (excluding expert testimony where the expert "base[d] her testimony solely on the word of [plaintiff] and failed to conduct independent research or consult any research from any source to support her supposition.") However, taking Dr. Madisetti's reports and deposition testimony as a whole, it is clear that he performed an independent analysis based on reliable data to determine which portions of the Development Code were incorporated into U3 drives.

Contrary to SanDisk's position, Dr. Madisetti based his opinions on an analysis of the Development Code and code revision documentation, and a comparison of that code with the U3 specifications produced by SanDisk. Dr. Madisetti also analyzed the declarations of Harkabi

and Elazar as well as the testimony and documents of SanDisk employees who worked on the

development of the U3 drives.  (See, e.g., Madisetti Report, at 29-36 (analyzing Sandisk code

revision documentation for ADIR 2 Firmware Downloads Rev 1.0-2.9 and comparing that

document with testimony of SanDisk engineers Avi Shmuel and Carlos Gonzalez, and the

Declaration of Gidon Elazar).)

        In addition, Dr. Madisetti's deposition testimony—not cited by SanDisk—makes

clear that he independently analyzed the Development Code and did not rely on assumptions

provided by counsel:

> [H]aving been in the field for 25 years, I do know that certain libraries and
> certain types of device specific information, certain types of features from
> other types of products, certain types of interfaces of whether it's USB or
> SD and others would preclude certain sections of the code being used in
> certain types of products.

(Madisetti Tr. at 30:6-30:14.)  And:

> Q: [D]id counsel identify to you which portions would be used in SanDisk
> products?
>
> A: No, they did not.

(Madisetti Tr. at 24:22-25).  Dr. Madisetti's imprecise responses to isolated deposition questions

regarding the U3 code do not warrant wholesale exclusion of his testimony.  See Sullivan v. Ford

Motor Co., No. 97 Civ. 0593 (RCC), 2000 WL 343777, *4 (S.D.N.Y. Mar. 31, 2000) (One who

is "knowledgeable about a particular subject need not be precisely informed about all details of

the issues raised in order to offer an opinion.").  Read in context, Dr. Madisetti's apparent

admission that he did not conduct an independent analysis referred only to the pedestrian fact

that he could not verify that the code he was given came from SanDisk's servers.  Of course, Dr.

Madisetti did not need to perform that analysis as SanDisk has represented on numerous

occasions that its document productions included the relevant source code.

While Dr. Johnson challenges the validity of Dr. Madisetti's analysis and his underlying assumptions, Dr. Madisetti's conclusions are admissible. Disputes as to the validity of the underlying data or methodology go to the weight of the evidence, and are for the fact-finder to resolve at trial. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir.1995); see also Feldman v. Van Gorp, No. 03 Civ. 8135 (WHP), 2008 WL 5429871, at *2 (S.D.N.Y. Dec. 19, 2008) ("Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional means of attacking shaky but admissible evidence."). Accordingly, SanDisk's motion to exclude Dr. Madisetti's report and testimony on the basis of his definition of U3 drives and his assumptions relating to source code is denied.

C. Dr. Madisetti's Definition of Firmware

SanDisk takes issue with Dr. Madisetti's definitions of firmware as "the definition of firmware as cited in the Microsoft Dictionary with the addition of ROM or flash memory as also options for storage" or as "a kind of specialized software that typically interacts in some manner with hardware." (Madisetti Report ¶ 7; Madisetti Rebuttal ¶ 11.) SanDisk argues that Dr. Madisetti's definitions are "manufactured out of whole cloth and not supported by a single outside source." (SanDisk Memo I at 18.) SanDisk's contention is without merit. Dr. Madisetti cites several outside sources to support his definition, including a textbook on software development, the Microsoft Dictionary, SanDisk's patent applications, and industry publications. (Madisetti Report, at 3-5, Madisetti Rebuttal, at 4-5, 7-8, 11-16.) Thus, the cases cited by SanDisk are inapposite. See, e.g., P24/7 Records, Inc. v. Sony Music Entm't, Inc., 514 F. Supp. 2d 571, 576 (S.D.N.Y. 2007) (excluding evidence where, unlike here, expert failed to cite a

single published authority in support of the extraordinary claim that standard business practices do not apply to the record industry).  The time for SanDisk to attack Dr. Madisetti's definition and underlying sources is during his cross-examination.  See Feldman, 2008 WL 5429871, at *2. Accordingly, SanDisk's motion to exclude Dr. Madisetti's testimony based on his definition of firmware is denied.

D.  Rule 26 Violations

In SanDisk's turn at the sanctions bat, SanDisk contends that Dr. Madisetti's expert testimony should be excluded.  Specifically, SanDisk argues that Dr. Madisetti failed to disclose (1) counsel's direction to assume the Development Code was used in SanDisk's products during the earn-out period, (2) his internet searches for definitions of the term "software," and (3) his conversations with Elazar that form the basis for his conclusion regarding the Sony Memory Stick.  SanDisk's first argument is without merit, as it is based on the faulty premise that Dr. Madisetti relied solely on counsel's representation.

With respect to his undisclosed internet searches, Dr. Madisetti's definition of software is supported, in part, by a definition from the website for the Michigan Department of Management, Technology and Budget.  (Madisetti Rebuttal ¶ 19.)  Dr. Madisetti testified that he had found the website after a few minutes searching on Google Scholar and reviewing "maybe a dozen" definitions.  (Madisetti Tr. at 283:19-288:13.)  When SanDisk asked to review records of Dr. Madisetti's searches to see where the Michigan website ranked in the Google Scholar results, Dr. Madisetti acknowledged that he had not preserved his search history and could not provide them to SanDisk.  (Madisetti Tr. at 292:16-293:13.)

Rule 26(a)(2)(B) mandates that an expert's report contain "a complete statement

of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Where an expert fails to disclose information, he may not use that information at trial unless the failure to disclose was "substantially justified" or "harmless." Fed R. Civ. P. 37(c)(1); see also Koppell v. N.Y. State Bd. of Elections, 97 F. Supp. 2d 477, 482 (S.D.N.Y. 2000) (excluding testimony where plaintiffs failed to produce tapes on which expert relied).

While not ideal, Dr. Madisetti's failure to preserve and disclose his internet searches was relatively harmless. Dr. Madisetti did not rely on the procedure he used to find the Michigan website—Google searching—to form his opinions. For instance, Dr. Madisetti does not argue that the Michigan website should be given more weight than some other authority because of its relative position in Google search results. In addition, SanDisk ran their own searches on Google Scholar (see SanDisk Memo at 24 n.6), and can use those searches on cross-examination to challenge the saliency of the Michigan website's definition or Dr. Madisetti's credibility. See In re Xerox Corp. Sec. Litig., 746 F. Supp. 2d 402, 414-15 (D. Conn. 2010) (finding expert's failure to disclose data harmless where (1) nondisclosure was inadvertent, (2) the expert did not rely on the non-disclosed data in forming his opinion, and (3) plaintiff attempted to reproduce the data). There is no indication that Dr. Madisetti purposefully destroyed the records of his searches.

Moreover, the draconian sanction SanDisk seeks—exclusion of all of Dr. Madisetti's testimony—is disproportionate to Dr. Madisetti's relatively minor oversight. Sanctions pursuant to Rule 37 are awarded at the discretion of the district court, and "preclusion is generally not ordered." Atkins v. Cnty. of Orange, 372 F. Supp. 2d 377, 396 (S.D.N.Y. 2004).

Where, as here, the importance of the information the expert failed to disclose is minor and the prejudice suffered by the opposing party is negligible, preclusion is not warranted. See Softel, Inc. v. Dragon Med. & Scientific Commc'ns., Inc., 118 F.3d 955, 961 (2d Cir. 1997).

SanDisk's third argument is moot for the reasons discussed in Section II, infra. Accordingly, SanDisk's motion to exclude Dr. Madisetti's testimony for violating Rule 26 is denied.

II.  SanDisk's Motion *In Limine* to Exclude Evidence Relating to the Sony Memory Stick

SanDisk moves to exclude evidence supporting Harkabi and Elazar's new claim that Sony Memory Stick sales triggered the earn-out.  Dr. Madisetti advanced this theory only after receiving Dr. Johnson's analysis showing SanDisk compiled FBCC code into its Socrates controller.  Dr. Johnson explained that the Socrates controller was embedded only in products unrelated to the U3 drives.  SanDisk maintains that Plaintiffs' new theory was never pled nor disclosed during discovery.  SanDisk argues that allowing the claim now would result in trial by ambush.  Harkabi and Elazar oppose the motion, and seek in the alternative to amend their complaint to add allegations relating to the Sony Memory Stick.

In deciding whether a plaintiff may introduce evidence of a new damages theory after discovery and on the eve of trial, courts in this circuit apply the same factors relevant to a request for leave to amend a complaint pursuant to Rule 15(a).  See Roberts v. Ground Handling, Inc., No. 04 Civ. 4955 (WCC), 2007 WL 2753862, at *3 (S.D.N.Y. Sept. 20, 2007); see also Austrian Airlines Oesterreichische Lufverkehrs A.G. v. UT Fin. Corp., No. 04 Civ. 3854 (RCC) (AJP), 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005); Point Prods. A.G. v. Sony Music Entm't, Inc., No. 93 Civ. 4001 (NRB), 2002 WL 31856951, at *3 (S.D.N.Y. Dec.19, 2002).

These factors include undue delay, prejudice to the opposing party, bad faith on the part of the party asserting the theory, and the futility of the damage theory sought to be proved. See Foman v. Davis, 371 U.S. 178, 182 (1962); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200-01 (2d Cir. 2007). Thus, the questions of whether to exclude evidence of the Sony Memory Stick and whether Plaintiffs should be given leave to amend their complaint can be resolved in the same analysis. Here, the factors tip heavily in favor of precluding evidence of the Sony Memory Stick and denying Harkabi and Elazar's request to amend their complaint.

Harkabi and Elazar never asserted their new damages theory until after the close of discovery. "The burden to explain a delay is on the party that seeks leave to amend." MacDraw, Inc. v. CIT Grp. Equip. Fin. Inc., 157 F.3d 956, 962 (2d Cir. 1998). Harkabi and Elazar attempt to excuse their delay on the grounds they only discovered the basis for their new theory after receiving Dr. Johnson's February 2011 expert report. But that is no excuse—Dr. Johnson did not disclose any new facts in her report, and Plaintiffs possessed the same Development Code that Dr. Johnson analyzed for more than sixteen months prior to Dr. Johnson's report. See McCarthy, 482 F.3d at 201 (affirming denial of motion to amend where plaintiff's expert was in possession of relevant information seven months before leave to amend was sought).

Harkabi and Elazar contend that their allegation that "SanDisk's refusal to pay the full earn-out" is broad enough to encompass its new damages claim based on sales of the Sony Memory Stick. But that argument also fails. Their complaint makes no reference to the Sony Memory Stick or Socrates controller. It focuses exclusively on the U3 drives. "A complaint must offer more than 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action.'"  Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC, No. 10

Civ. 7244 (WHP), 2011 WL 2945842, at *4 (S.D.N.Y. July 11, 2011) (citations omitted).

           An amendment several weeks before trial would prejudice SanDisk unfairly.  See

Roberts, 2007 WL 2753862, at *5 ("To require defendant to incur additional costs and to change

its strategy on the eve of trial because plaintiff has concocted a new theory three years into the

litigation is simply not fair and would, in a real sense, unduly prejudice defendant.")  Claims

based on the Socrates controller and Sony Memory Stick would require significant additional

discovery and another round of expert reports.  But fact discovery closed in this action three

months before Plaintiffs raised their new theory.  See, e.g., Zurich Am. Ins. Co. v. ABM Indus.,

Inc., 397 F.3d 158, 172-73 (2d Cir. 2004) ("Because discovery was closed and trial was

approaching, the district court could reasonably conclude that [counterclaim-defendant] would

be substantially prejudiced by the introduction of the new claim[.]").  Moreover, SanDisk

reasonably constructed its defense strategy and tailored discovery based on the allegations in the

complaint and Harkabi and Elazar's express disavowal of damages regarding any product other

than the U3.  See McCarthy, 482 F.3d at 201 ("Having received such notice, a defendant may

conduct his trial preparation accordingly and is not required, based on the plaintiff's subsequent

conduct in litigation, to anticipate future claims that a plaintiff might intend to pursue.").  If

evidence of the Sony Memory Stick was permitted, SanDisk would be required to defend against

a product for which little or no discovery was conducted.  That sort of prejudice is manifestly

unfair.  Roberts, 2007 WL 2753862, at *5.

           While Harkabi and Elazar's prior disavowal of products other than the U3, and

their subsequent about-face, are not indicative of bad faith, the prejudice to SanDisk is plain.  In

addition, permitting Plaintiffs' new damages theory may be futile given Dr. Madisetti's lack of a reliable basis to conclude that the Sony Memory Stick used the Socrates controller. At best, the bad faith and futility factors are neutral and would not prevent this Court from excluding evidence of the Sony Memory Stick. See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (the district court has discretion to deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant."). Accordingly, SanDisk's motion to exclude evidence that sales of the Sony Memory Stick triggers the earn-out is granted, and Plaintiffs' motion to amend their complaint is denied.

## CONCLUSION

For the foregoing reasons, SanDisk's motion to exclude the report and testimony of Dr. Madisetti is denied and its motion to exclude evidence relating to the Sony Memory Stick is granted. Harkabi and Elazar's motion to amend their complaint is denied. The Clerk of the Court is directed to terminate the motions pending at ECF Nos. 50 and 53.

Dated: March 12, 2012
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*

Charles A. Stillman, Esq.
Stillman & Friedman, P.C.
425 Park Avenue, 26th Floor
New York, NY 10022
*Counsel for Plaintiffs*

Michael H. Gruenglas, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
*Counsel for Defendant*